# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WELLS FARGO CREDIT, INC.                          CIVIL ACTION – Law
Roanoke Building
109 S. Seventh Street
Minneapolis, MN  55402,

      Plaintiff,

  v.                                                            No.

BRUTCO STAINLESS & ALLOY, INC.
512 Hamilton Street
Allentown, PA  18101

   And

LEHIGH METALS, LLC
512 Hamilton Street
Allentown, PA  18101

   And

BRUNSWICK TUBE & BAR, LLC
512 Hamilton Street
Allentown, PA  18101

   And

GARY BACHER, Individually
4479 Jamestown Ct.
Allentown, PA 18104

   And

MICHAEL RUBINBERG, Individually
848 East 43d Street
Brooklyn, NY 11210

   And

JOEL WIENER, Individually
1490 Coventry Rd.
Allentown, PA 18104,

      Defendants.

## COMPLAINT

Wells Fargo Credit, Inc. ("Wells Fargo"), for its Complaint against Brutco Stainless & Alloy, Inc. ("Brutco"); Lehigh Metals, LLC ("Lehigh"), Brunswick Tube & Bar, LLC ("Brunswick"), Gary Bacher, individually ("Bacher"), Michael Rubinberg, individually ("Rubinberg"), and Joel Wiener, individually ("Wiener") (collectively, "Defendants"), respectfully alleges and avers that:

## PARTIES

1.      Wells Fargo is a Minnesota corporation with its principal place of business at Roanoke Building, 109 S. Seventh Street, Minneapolis, Minnesota 55402.

2.      Upon information and belief, Brutco is a Pennsylvania corporation with its principal place of business at 512 Hamilton Street, Allentown, Pennsylvania 18101.

3.      Upon information and belief, Lehigh is a Pennsylvania limited liability company with its principal place of business at 512 Hamilton Street, Allentown, Pennsylvania 18101.

4.      Upon information and belief, Brunswick is a Pennsylvania corporation with its principal place of business at 512 Hamilton Street, Allentown, Pennsylvania 18101.

5.      Upon information and belief, Bacher is a resident of the Commonwealth of Pennsylvania and is an officer, director, shareholder and/or member of National Stainless & Alloy, LLC ("National"), Brutco, Lehigh, and Brunswick.

6.      Upon information and belief, Rubinberg is a resident of the State of New York, and is an officer, director, shareholder and/or member of National, Brutco, Lehigh, and Brunswick.

7.      Upon information and belief, Wiener is a resident of the Commonwealth of Pennsylvania, and is an officer, director, shareholder and/or member of National, Brutco, Lehigh, and Brunswick.

## JURISDICTION AND VENUE

8.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1) and (c)(1), because the matter in controversy exceeds $75,000, exclusive of costs and interest, and is between citizens of different states.

9.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) and (2) because the Defendants reside and do business in this District, and a substantial portion of the events giving rise to Wells Fargo's claims occurred in this District.

## FACTUAL BACKGROUND

**A.**        **THE UNDERLYING LOAN AGREEMENT**

10.    On October 22, 1999, Century Business Credit Corporation ("Century") entered into a Loan and Security Agreement, which was amended from time to time (collectively, the "Loan Agreement"), with National and Brutco.  A true copy of the Loan Agreement is attached hereto as Exhibit "A."

11.    Wells Fargo is the assignee of Century and has assumed all rights and obligations of Century pursuant to the Loan Agreement.  A true copy of the Loan Sale Agreement is attached hereto as Exhibit "B."

12.    National is not a party to this action because it is the subject of a bankruptcy proceeding pending in the United States Bankruptcy Court for the Eastern District of Pennsylvania entitled In Re: National Stainless & Alloy, LLC, Case No. 02-20592 (the "Bankruptcy Action").

13.    National was formerly engaged in the business of processing and selling secondary stainless steel and aluminum products.  Defendant Lehigh's business is, on information and belief, precisely the same as National's former business, that is, processing and selling secondary stainless steel and aluminum products.  The former business of defendant Brutco, which is now undergoing a voluntary liquidation that is near completion, was the manufacturing and processing of steel tubing.  Defendant Brunswick is, on information and belief, now engaged in that same business.

14.     Defendants Bacher, Rubinberg and Wiener are, upon information and belief, officers, directors, shareholders and/or members of National, Lehigh, Brutco and Brunswick.

15.     Pursuant to the Loan Agreement, Wells Fargo, as assignee of Century, provided National and Brutco with an aggregate credit facility of up to eight million dollars ($8,000,000).   As collateral for this financing, National and Brutco each granted a security interest in all of their respective inventory, machinery, equipment, general intangibles, accounts receivable, and other assets (the "Collateral").

16.     In connection with the execution of the Loan Agreement, Rubinberg provided Wells Fargo, as assignee of Century, with a Limited Guarantee dated October 22, 1999 of National and Brutco's obligations under the Loan Agreement up to the principal sum of $350,000 (the "Rubinberg Guarantee").   A true copy of the Rubinberg Guarantee is attached hereto as Exhibit "C."

**B.**          **NATIONAL AND BRUTCO'S LIQUIDATION AND BANKRUPTCY**

17.     As of October 2001, National and Brutco were experiencing significant cash flow problems and were in default under the Loan Agreement.   National and Brutco therefore informed Wells Fargo that they would be unable to generate sufficient availability (or "borrowing capacity")under the Loan Agreement.

18.     As of November 2001, the outstanding loans from Wells Fargo to National and Brutco exceeded the amount permitted to be borrowed under the Loan Agreement, and National and Brutco were unable to make payments of principal and interest when due.   As such, National and Brutco informed Wells Fargo that they were contemplating filing for Chapter 11 bankruptcy protection as to one or both companies.

19.     Thereafter, Wells Fargo engaged in discussions with National and Brutco regarding the potential terms and conditions for providing debtor-in-possession bankruptcy financing.   However, National and Brutco subsequently notified Wells Fargo that, rather than file for bankruptcy, the two companies would voluntarily liquidate their assets and use the proceeds to repay their indebtedness to Wells Fargo.   As a result, National and Brutco engaged the

services of a consultant, Nachman Hays Brownstein, to assist in the organization and preparation of a liquidation plan and budget.

20.    On January 4, 2002, Wells Fargo entered into a Forbearance Agreement with National and Brutco setting forth the details of the companies' liquidation plan.

21.    Despite extensive efforts by National to avoid bankruptcy, on or about February 11, 2002, five unsecured creditors of National filed an involuntary bankruptcy proceeding against National.  On or about May 16, 2002, National consented to the entry of an order for relief under the Bankruptcy Code, and immediately thereafter converted its bankruptcy case to a proceeding under Chapter 11 of the Bankruptcy Code.

22.    On or about April 8, 2002, Wells Fargo instituted an action to collect the sums due and owing under the Rubinberg Guarantee in the Supreme Court of New York, New York County, Index No. 02/601342.

23.    The amount currently due and owing to Wells Fargo under the Loan Agreement is Two Million Nine Hundred Forty-Nine Thousand Four Hundred Dollars ($2,949,400), plus interest, attorneys' fees and costs.

**C.**        **THE MUTUAL RELEASE AGREEMENT**

24.    From the closing of the subject loan transaction through March 2002, National and Brutco, in order to obtain financing under the Loan Agreement, provided Wells Fargo (and its predecessor, Century), with weekly inventory certifications attesting to the amount of their respective inventories in pounds, as well as the approximate dollar value of such inventory.

25.    On February 22, 2002, representatives of Wells Fargo performed a field examination at National and Brutco's warehouse facility.  During that examination, National and Brutco, by and through their respective officers, agents and representatives, answered various questions and provided Wells Fargo with information regarding their inventory, equipment, receivables, outstanding invoices and other matters.

26.    Wells Fargo also performed a test count of National's inventory using approximately 20-30% of the inventory on-hand, and discovered no material exceptions or

variances from the most recent inventory certifications delivered by National. Those certifications identified over eight million pounds of inventory valued at approximately $3.2 million.

27.    In addition, at the time of this field examination, the most recent receivables and accounts receivable aging reports (known as "ageings") delivered by National to Wells Fargo indicated substantial aggregate outstanding accounts receivable.

28.    Wells Fargo was therefore led to believe by National and Brutco, through their respective officers, agents and representatives, that there was sufficient value in the Collateral to support National and Brutco's then-existing indebtedness of approximately $2.9 million.

29.    On February 25, 2002, relying on the representations and certifications of National, Brutco, and their respective officers, agents and representatives, including Bacher and Wiener, Wells Fargo agreed to enter into a General Mutual Release Agreement (the "Mutual Release Agreement") with Bacher, Wiener and Rubinberg. A true copy of the Mutual Release Agreement is attached hereto as Exhibit "D."

30.    As a material inducement to Wells Fargo's execution of the Mutual Release Agreement, and as a prerequisite to the releases therein taking effect, the parties agreed, among other things, that Bacher on behalf of himself, National, Brutco, Wiener, Rubinberg, and all of their affiliate entities, would provide full cooperation and assistance to Wells Fargo in protecting, selling, disposing, and liquidating the inventory of National and Brutco and in collecting the receivables of National and Brutco.

31.    The parties further agreed under the Mutual Release Agreement that Bacher would, among other things, "cause all proceeds of sale and collections from the Collateral to be remitted to Wells [Fargo] within two (2) business days of receipt," "continue to use his good faith best efforts to assist Wells [Fargo] in the protection and liquidation of the inventory . . . and use his good faith best efforts to assist Wells [Fargo] in the collection, settlement and/or compromise of all Receivables," "use his best efforts to assist Wells [Fargo] . . . in connection with the prosecution of all matters relating to certain recoveries by [Wells

Fargo] of claims asserted against its insurance carriers," and "permit all representatives, consultants or agents of Wells [Fargo] to have access to Borrowers' premises, books and records during normal business hours upon twenty-four hour prior notice to Borrowers[.]"

32.     Pursuant to the express terms of the Mutual Release Agreement, as well as a corresponding Escrow Agreement entered into by and among the parties, the Mutual Release Agreement was to be held in escrow pending the occurrence of certain events and the full performance by Bacher of his obligations thereunder.

## D.        DEFENDANTS' BREACHES AND MALFEASANCE

### (1)        Misappropriation of Assets

33.     On or about March 21, 2002, Wells Fargo performed another field examination at National and Brutco's warehouse facility, and through a test count of the inventory, determined that approximately 2.5 million pounds of inventory remained at the site. Based upon the ongoing weekly inventory certifications provided to Wells Fargo, along with adjustments for documented sales reported by National and Brutco to Wells Fargo, approximately 6.5 million pounds of inventory should have been on-site at that time.

34.     Accordingly, on information and belief, during the one month span between February 22, 2002, and March 21, 2002, an unaccounted for shortfall in inventory of approximately four million (4,000,000) pounds was created by National and/or Brutco, through their principal owners, Bacher, Rubinberg and Wiener, and in concert with their affiliate entities, including Lehigh and Brunswick.

35.     The approximate value of this missing inventory is Two Million Dollars ($2,000,000)

36.     Wells Fargo's March 21, 2002, field examination also revealed that National's inventory had been commingled with inventory purportedly belonging to Lehigh. Wells Fargo representatives noted that inventory stamped with National's name was being stored together with inventory bearing Lehigh's name in an area of the warehouse that was clearly marked and segregated for the benefit of Lehigh.   Wells Fargo had not received any

documentation reporting the sales of inventory to Lehigh for value, nor did it find any record evidencing that such sales occurred.  Alternatively, if any such sales had occurred and the goods were paid for by Lehigh, Wells Fargo did not receive the proceeds.

37.    Furthermore, on information and belief, National and Brutco have transferred and/or permitted the ongoing use of their equipment, office furnishings, supplies, computers, computer software, customer lists and other tangible and intangible assets (all of which are part of Wells Fargo's Collateral) by Lehigh and Brunswick, without any payment.

38.    Also, on information and belief, during the approximate time period of January 2002 through April 2002, National and Brutco's employees were engaged in activities and performing services for the businesses of Lehigh and Brunswick.  Moreover, during this time period, Lehigh and Brunswick were utilizing National and Brutco's warehouse facility, while all rent was being paid by National and Brutco, using monies advanced by Wells Fargo.  Similarly, on information and belief, Lehigh and Brunswick's employee payrolls and all other benefits, to the extent they existed, were improperly funded by monetary advances made by Wells Fargo to National and Brutco under the approved liquidation plan and budget.

39.    Indeed, all of these entities operate from the same warehouse and office facilities with virtually all of the same employees.  Lehigh performs the same business as National did previously, and Brunswick performs the same business as did Brutco.  Moreover, National and Lehigh hold themselves out to the general public as the same company, as do Brutco and Brunswick.  For example, Lehigh is listed on the internet under the website www.nationalstainless.com, and a website link for Brutco directs a potential customer to the website for Brunswick.  True copies of National, Lehigh, Brutco and Brunswick's web pages are attached hereto as Exhibit "E."

40.    As a direct result of this purposeful commingling and misappropriation of assets (both tangible and intangible) and diversion of business, Lehigh has become the functional equivalent of National without any payment or direct assumption of National's obligations.  Likewise, Brunswick has become the functional equivalent of Brutco through the same unlawful process.

41.     All the while, National and Brutco, through their respective officers, agents and representatives, have consistently and systematically thwarted Wells Fargo's efforts to maximize the value of its Collateral and minimize its loss from the extension of credit.

### (2)     Misrepresentations and Failures in Collecting Receivables

42.     In early 2001, National certified to Wells Fargo as Collateral certain accounts receivable from a company known as National Export, Inc. ("NEI").  National, however, did not disclose to Wells Fargo that NEI was an affiliate entity of National, which, on information and belief, is owned in whole or in part by Wiener and/or the wives of Wiener and Bacher.

43.     Upon information and belief, NEI sold the goods purchased from National in foreign markets and received payment on those sales.  However, no payments were made by NEI to National on its outstanding accounts.  In fact, National wrote off the NEI receivables on their ageings, and never forwarded any of these funds to Wells Fargo.

44.     In addition, on information and belief, National has certified to Wells Fargo as Collateral accounts receivable that were not based upon *bona fide* sales, but instead reflected pre-billings for product not yet delivered, resulting in substantial over statements of accounts receivable that was certified as Collateral.

45.     Also, on information and belief, National has certified to Wells Fargo delivery of inventory to third parties on consignment as actual sales.  Thus, National effectively sought and may have received advances from Wells Fargo by representing such purported sales as Collateral eligible for advances, when in fact, the sales had not yet occurred.  National also reported inter-company sales as Collateral eligible for advances even though the monies never collected.

46.     Furthermore, pursuant to the terms of the Mutual Release Agreement, National and Brutco, through their principals Bacher, Rubinberg and Wiener, were required to provide Wells Fargo with access to their respective premises and their books and records.  Likewise, pursuant to a Bench Order entered in the Bankruptcy Action, National was required to provide Wells Fargo with similar access to its books and records.  However, Wells Fargo's

efforts to access the companies' premises and obtain these records have been consistently and systematically delayed and thwarted by Bacher and Wiener.

47. For example, only a portion of the accounts receivable records of National and Brutco were produced to Wells Fargo, and they were presented in a disorganized and incomplete state with certain critical information missing, including cash receipt journals, copies of checks received, sales journals, invoice registers, certain invoices, shipping documents, correspondence and collection notes.

48. Moreover, on numerous other occasions, Wells Fargo requested that Bacher and his staff contact customers in an attempt to verify, collect and settle unpaid and overdue accounts receivable, but they have failed and refused to do so. Indeed, many of the accounts receivable reported to Wells Fargo as outstanding and uncontested were already in dispute or had been paid. Thus, the proceeds to be realized from the collection of the accounts receivable are substantially less than that represented by Defendants.

49. Pursuant to the terms of the Mutual Release Agreement, Bacher was also required, on behalf of National, Brutco, Wiener, Rubinberg and their affiliate entities, to assist Wells Fargo in its attempts to recover certain monies from National and Brutco's insurance carriers. Bacher, however, has failed to cooperate with Wells Fargo in such recoveries by, among other things, refusing to obtain necessary documents and information from Wiener.

50. Ultimately, neither Bacher, Wiener, nor any other representative of National or Brutco has provided Wells Fargo with meaningful assistance or cooperation in identifying and collecting accounts receivable or resolving outstanding payment issues. In the meantime, on information and belief, Lehigh and Brunswick, as successors to National and Brutco, are presently doing business with and collecting receivables from the same entities that have large outstanding balances with National and Brutco.

**Count I**
**(Declaratory Judgment Against All Defendants**
**as to the Mutual Release Agreement)**

51.    Plaintiff repeats, realleges and reaffirms paragraphs 1 through 50 of this Complaint as though fully set forth at length therein.

52.    The acts and omissions of Defendants have harmed and continue to harm Wells Fargo's interest in the Collateral.

53.    An actual controversy of a justiciable nature presently exists between Wells Fargo and Defendants concerning these acts and omissions.  This controversy is of sufficient immediacy to justify the issuance of declaratory relief.

54.    There is no adequate remedy at law to protect Wells Fargo's interests, and the Court's decision on this issue will definitively determine the parties' rights under the Mutual Release Agreement.

55.    Wells Fargo seeks an Order declaring that Bacher, in concert with and on behalf of all Defendants, failed to fulfill his obligations under the Mutual Release Agreement, including but not limited to paragraphs 3, 5 and 6 thereof, and, as such, the releases contained therein have not and never will take effect.

56.    Wells Fargo seeks an Order further declaring that its execution of the Mutual Release Agreement was procured by Defendants through fraudulent inducement and/or negligent misrepresentation and, as such, the releases contained therein have not and never will take effect.

57.    Alternatively, Wells Fargo seeks an Order declaring that its execution of the Mutual Release Agreement was the product of mutual and/or unilateral mistake and, as such, the releases contained therein have not and never will take effect.

**WHEREFORE,** Plaintiff demands judgment against all Defendants as follows:

a.    rendering the Mutual Release Agreement null and void;

b.    for costs of suit incurred herein;

c.    for attorney's fees to the extent permitted by applicable law; and

d.    for such other and further relief as the Court deems just and proper.

-11-

## Count II
### (Fraud Against All Defendants)

58.    Plaintiff repeats, realleges, and reaffirms paragraphs 1 through 57 of this Complaint as though fully set forth at length therein.

59.    Upon information and belief, Defendants made false representations of material fact regarding the amount, value, location, disposition, transfer, collection and commingling of Collateral in which Wells Fargo was granted a security interest by National and Brutco.  Defendants also intentionally concealed material information concerning the amount, value, location, disposition, transfer, collection and commingling of such Collateral in order to deceive Wells Fargo and induce it to provide funding under the Loan Agreement.

60.    Upon information and belief, Defendants made false representations of material fact to Wells Fargo regarding their use, transfer and commingling of funds issued by Wells Fargo to National and Brutco, including the liquidation financing provided from about January 2002 through March 2002.  Defendants also intentionally concealed such information in order to deceive Wells Fargo.

61.    Upon information and belief, Defendants made false representations of material fact regarding the availability and content of National and Brutco's books and records, which information is critical to Wells Fargo's liquidation of assets and collection of accounts receivable.  Defendants also intentionally concealed information regarding their books and records in order to deceive Wells Fargo.

62.    Upon information and belief, Defendants knowingly and purposefully made these material misrepresentations and omissions.

63.    Wells    Fargo    justifiably    relied    upon    Defendants'    material misrepresentations and omissions to its detriment.

64.    As a direct and proximate result of Defendants' misrepresentations and omissions, Wells Fargo has been and will continue to be damaged in its business and property.

**WHEREFORE,** Plaintiff demands judgment against all Defendants as follows:

a.      an equitable accounting of all Collateral and proceeds thereof;

b.      the imposition of a constructive trust over such Collateral and proceeds thereof for the benefit of Wells Fargo;

c.      for compensatory damages;

d.      for punitive damages;

e.      for pre- and post-judgment interest;

f.      for attorney's fees to the extent permitted by applicable law; and

g.      for such other and further relief as the Court deems just and proper.

<u>**Count III**</u>
**(Negligent Misrepresentation Against**
**All Defendants)**

65.     Plaintiff repeats, realleges, and reaffirms paragraphs 1 through 64 of this Complaint as though fully set forth at length therein.

66.     Upon information and belief, Defendants made false representations of material fact to Wells Fargo regarding the amount, value, location, disposition, transfer, collection and commingling of the Collateral in which Wells Fargo was granted a security interest by National and Brutco.

67.     Upon information and belief, Defendants made false representations of material fact to Wells Fargo regarding their use, transfer and commingling of funds issued by Wells Fargo to National and Brutco, including the liquidation financing provided from about January 2002 through March 2002.

68.     Upon information and belief, Defendants made false representations of material fact regarding the availability and content of National and Brutco's books and records, which information is critical to Wells Fargo's liquidation of assets and collection of accounts receivable.

69.     Upon information and belief, Defendants' representations were false and made without reasonable care and with the intention that Wells Fargo would rely on these representations.

70. Wells Fargo justifiably relied upon Defendants' material representations to its detriment.

71. As a direct and proximate result of Defendants' representations, Wells Fargo has been and will continue to be damaged in its business and property.

**WHEREFORE,** Plaintiff demands judgment against all Defendants as follows:

a. an equitable accounting of all Collateral and proceeds thereof;

b. the imposition of a constructive trust for the benefit of Wells Fargo over all Collateral and proceeds thereof;

c. for compensatory damages;

d. for pre- and post-judgment interest;

e. for attorney's fees to the extent permitted by applicable law; and

f. for such other and further relief as the Court deems just and proper.

### Count IV
### (Civil Conspiracy Against
### All Defendants)

72. Plaintiff repeats, realleges, and reaffirms paragraphs 1 through 71 of this Complaint as though fully set forth at length therein.

73. Upon information and belief, Defendants acted in concert with one another to achieve the common purpose of harming Wells Fargo with respect to the amount, value, location, disposition, transfer, collection and commingling of Wells Fargo's Collateral.

74. Upon information and belief, Defendants acted in concert with one another to achieve the common purpose of harming Wells Fargo with respect to their use, transfer and commingling of funds issued by Wells Fargo to National and Brutco, including the liquidation financing provided from about January 2002 through March 2002.

75. Upon information and belief, Defendants acted in concert with one another to achieve the common purpose of harming Wells Fargo with respect to the availability and content of National and Brutco's books and records, which information is critical to Wells Fargo's liquidation of assets and collection of accounts receivable.

76.    The Defendants intended to injure Wells Fargo by impairing and undermining Wells Fargo's rights and interests in the Collateral.

77.    As a direct and proximate result of Defendants' conduct, Wells Fargo has been and will continue to be damaged in its business and property.

**WHEREFORE,** plaintiff demands judgment against all Defendants as follows:

a.    an equitable accounting of all Collateral and proceeds thereof;

b.    the imposition of a constructive trust over such Collateral and proceeds thereof for the benefit of Wells Fargo;

c.    for compensatory damages;

d.    for punitive damages;

e.    for pre- and post-judgment interest;

f.    for attorney's fees' to the extent permitted by applicable law; and

g.    for such other and further relief as the Court deems just and proper.

### <u>Count V</u>
### (Conversion and Misappropriation Against All Defendants)

78.    Plaintiff repeats, realleges, and reaffirms paragraphs 1 through 77 of this Complaint as though fully set forth at length therein.

79.    Upon information and belief, Defendants commingled, misappropriated and converted Wells Fargo's Collateral and other assets.

80.    Upon information and belief, Defendants commingling, misappropriated and converted funds issued by Wells Fargo to National and Brutco, including the liquidation financing provided from about January 2002 through March 2002.

81.    Defendants did not have Wells Fargo's consent for such actions, nor did Defendants have lawful justification for completing such actions.

82.    As a direct and proximate result of Defendants' conduct, Wells Fargo has been and will continue to be damaged in its business and property.

**WHEREFORE,** Plaintiff demands judgment against all Defendants as follows:

a.　　an equitable accounting of all Collateral and proceeds thereof;

b.　　the imposition of a constructive trust over such Collateral and proceeds thereof for the benefit of Wells Fargo;

c.　　for compensatory damages;

d.　　for punitive damages;

e.　　for pre- and post-judgment interest;

f.　　for attorney's fees' to the extent permitted by applicable law; and

g.　　for such other and further relief as the Court deems just and proper.

### Count VI
**(Fraudulent Conveyance Against All Defendants
Pursuant to 12 Pa.C.S.A. § 104 *et seq.*)**

83.　　Plaintiff repeats, realleges, and reaffirms paragraphs 1 through 82 of this Complaint as though fully set forth at length therein.

84.　　Upon information and belief, National and/or Brutco transferred the Collateral and other assets to Defendants, without just compensation and knowing that such transfers would further deplete their assets and leave them unable to repay their indebtedness to Wells Fargo.

85.　　Upon information and belief, Defendants knowingly accepted such Collateral and other assets with the intent to hinder, delay and defraud Wells Fargo.

86.　　Upon information and belief, National and/or Brutco transferred funds issued by Wells Fargo to Defendants, including the liquidation financing provided from about January 2002 through March 2002, without just compensation and knowing that such transfers would further deplete their assets and leave them unable to repay their indebtedness to Wells Fargo.

87.　　Upon information and belief, Defendants knowingly accepted such funds with the intent to hinder, delay and defraud Wells Fargo.

88.　　Wells Fargo has a superior interest and right of possession in the subject Collateral and funds than that of Defendants.

-16-

89.    As a direct and proximate result of Defendants' conduct, Wells Fargo has been and will continue to be damaged in its business and property.

**WHEREFORE,** Plaintiff demands judgment against all Defendants as follows:

a.    for compensatory damages;

b.    for punitive damages;

c.    for pre- and post-judgment interest;

d.    for attorney's fees' to the extent permitted by applicable law; and

e.    for such other and further relief as the Court deems just and proper.

**Count VII**
**(Unjust Enrichment Against**
**All Defendants)**

90.    Plaintiff repeats, realleges, and reaffirms paragraphs 1 through 89 of this Complaint as though fully set forth at length therein.

91.    Upon information and belief, Defendants transferred and/or co-mingled the Collateral.

92.    Upon information and belief, Defendants transferred and/or co-mingled funds issued by Wells Fargo to National and Brutco, including the liquidation financing provided from about January 2002 through March 2002.

93.    These actions have conferred a benefit upon Defendants for which they have not compensated Wells Fargo.

94.    As a direct and proximate result of Defendants' conduct, Wells Fargo has been and will continue to be damaged in its business and property.

**WHEREFORE,** Plaintiff demands judgment against all Defendants as follows:

a.    for compensatory damages;

b.    for pre- and post-judgment interest;

c.    for attorney's fees' to the extent permitted by applicable law; and

d.    for such other and further relief as the Court deems just and proper.

## Count VIII
### (Breach of the Loan Agreement
### Against Brutco)

95.    Plaintiff repeats, realleges, and reaffirms paragraphs 1 through 94 of this Complaint as though fully set forth at length therein.

96.    Brutco is in default of the covenants, terms and conditions of the Loan Agreement for, among other things, failing to make payments of principal and interest to Wells Fargo when due.

97.    Wells Fargo has demanded payment from Brutco, but Brutco has failed pay Wells Fargo the amounts due under the Loan Agreement.

98.    Brutco is in breach of the Loan Agreement and, as a result, Wells Fargo has been and will continue to be damaged in its business and property.

**WHEREFORE,** Plaintiff demands judgment against Bructo as follows:

a.    for compensatory damages;

b.    for pre- and post-judgment interest;

c.    for attorney's fees' to the extent permitted by applicable law; and

d.    for such other and further relief as the Court deems just and proper.

## Count IX
### (Alternatively, Fraud in the Inducement
### Against Brutco, Bacher and Wiener)

99.    Plaintiff repeats, realleges, and reaffirms paragraphs 1 through 98 of this Complaint as though fully set forth at length therein.

100.    Upon information and belief, Brutco, Wiener and Bacher, in concert with and on behalf of National, purposefully misrepresented the amount and value of National and Brutco's inventory upon entering into, and acting under the Loan Agreement.

101.    Specifically, National, Wiener and Bacher now contend in the context of the Bankruptcy Action that, using the concept of "theoretical weight," steel and other metal inventory can have a 16% variance from its actual scale weight.  National, Brutco, Wiener and Bacher had never previously informed Wells Fargo of this purported variance and, therefore, if the concept is correct with respect to National and Brutco's inventory, these defendants

consistently and systematically misrepresented the amount and value of such inventory to Wells Fargo by providing of inventory certifications, financial statements and other information prior to and throughout the existence of the Loan Agreement.

102. Upon information and belief, Brutco, Wiener and Bacher, in concert with and on behalf of National, knowingly and purposefully made these material misrepresentations and omissions.

103. Wells Fargo justifiably relied upon these material misrepresentations and omissions to its detriment.

104. As a direct and proximate result of these misrepresentations and omissions, Wells Fargo has been and will continue to be damaged in its business and property.

**WHEREFORE,** plaintiff demands judgment against Brutco, Wiener and Bacher as follows:

a. for compensatory damages;

b. punitive damages;

c. for pre-and post-judgment interest;

d. for attorney's fees to the extent permitted by applicable law; and

e. for such other and further relief as the Court deems just and proper.

### Count X
### (Alternatively, Negligent Misrepresentation Against Brutco, Bacher and Wiener Relating to Inventory Amount and Value)

105. Plaintiff repeats, realleges, and reaffirms paragraphs 1 through 104 of this Complaint as though fully set forth at length therein.

106. Upon information and belief, Brutco, Wiener and Bacher, in concert with and on behalf of National, misrepresented the amount and value of National and Brutco's inventory upon entering into and acting under the Loan Agreement.

107. Specifically, National, Wiener and Bacher now contend in the context of the Bankruptcy Action that, using the concept of "theoretical weight," steel and other metal inventory can have a 16% variance from its actual scale weight. National, Brutco, Wiener and

Bacher had never previously informed Wells Fargo of this purported variance and, therefore, if the concept is correct with respect to National and Brutco's inventory, these defendants consistently and systematically misrepresented the amount and value of such inventory to Wells Fargo by providing of inventory certifications, financial statements and other information prior to and throughout the existence of the Loan Agreement.

108.    Brutco, Wiener and Bacher, in concert with and on behalf of National, had a duty to provide full and accurate information to Wells Fargo.

109.    Wells Fargo justifiably relied upon the material misrepresentations made by Brutco, Wiener and Bacher, in concert with and on behalf of National, to its detriment.

110.    As a direct and proximate result of these misrepresentations, Wells Fargo has been and will continue to be damaged in its business and property.

**WHEREFORE,** plaintiff demands judgment against Brutco, Wiener and Bacher as follows:

a.    for compensatory damages;

b.    for pre-and post-judgment interest;

c.    for attorney's fees to the extent permitted by applicable law; and

e.    for such other and further relief as the Court deems just and proper.

_____
Daniel T. Fitch
PA Attorney No. 53717
STRADLEY, RONON, STEVENS &YOUNG, LLP
2600 One Commerce Square
Philadelphia, PA  19103-7098
(215) 564-8000

Attorneys for Plaintiff,
Wells Fargo Credit, Inc.

Dated:  June 6, 2002

Of Counsel:

Zachary D. Rosenbaum, Esq.
LOWENSTEIN SANDLER PC
65 Livingston Avenue
Roseland, NJ  07068-1791
973-597-2500

Doc. #585859v.2