**STEVENS & JOHNSON**
By: Richard F. Stevens, Esq.                    **Attorney for Brunswick Tube &**
740 Hamilton Street                             **Bar LLC, Lehigh Metals LLC, Gary**
Allentown, PA 18101                             **Bacher, Joel Wiener and Brutco**
I.D. 08073                                      **Stainless Steel & Alloy, Inc**

| | | |
|---|---|---|
| WELLS FARGO CREDIT, INC., | ) | UNITED STATES DISTRICT COURT |
| Plaintiff | ) | FOR THE EASTERN DISTRICT |
| | ) | OF PENNSYLVANIA |
| vs. | ) | |
| | ) | Case No. 02-CV-3636 |
| BRUTCO STAINLESS & ALLOY, INC., | ) | |
| LEHIGH METALS, LLC, BRUNSWICK | ) | |
| TUBE & BAR, LLC, GARY BACHER, | ) | |
| MICHAEL RUBINBERG and JOEL | ) | Assigned to the |
| WIENER, | ) | Honorable Berle M. Schiller |
| Defendants | ) | |

## <u>NOTICE TO PLEAD</u>

TO:     Plaintiffs


        YOU ARE HEREBY NOTIFIED TO FILE A WRITTEN RESPONSE TO THE
ENCLOSED COUNTERCLAIM WITHIN TWENTY (20) DAYS FROM THE SERVICE
HEREOF OR A JUDGMENT MAY BE ENTERED AGAINST YOU.  THE SAME IS
HEREBY CERTIFIED TO BE A TRUE AND CORRECT COPY OF THE ORIGINAL ON
FILE.

                                STEVENS & JOHNSON



                        BY:_____
                                Richard F. Stevens, Esquire
                                I.D. #08073
                                Attorneys for Defendant
                                740 Hamilton Street
                                Allentown, PA  18101
                                (610) 439-1451

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WELLS FARGO CREDIT, INC., | ) | |
| Plaintiff | ) | |
| | ) | Case Number: 02-3636 |
| vs. | ) | |
| BRUTCO STAINLESS & ALLOY, INC., | ) | |
| LEHIGH METALS LLC, BRUNSWICK | ) | Assigned to Judge SCHILLER |
| TUBE & BAR LLC, GARY BACHER, | ) | |
| MICHAEL RUBINBERG AND  JOEL | ) | |
| WIENER, | ) | |
| Defendants | ) | |

Answer and Affirmative Defenses and Counterclaim of Defendants
Brunswick Tube & Bar LLC, Lehigh Metals LLC and Gary Bacher and Joel Wiener
and Answer and Affirmative Defenses of Brutco Stainless & Alloy, Inc.

Answer

1.    DENIED. At all relevant times, Wells Fargo Credit, Inc. has represented its place of

business as 119 West 40th Street, New York, New York. Said plaintiff is herein called

Wells.

2.    Admitted.

3.    Admitted.

4.    Denied. Brunswick Tube & Bar LLC is a limited liability company with its executive

office at 512 Hamilton Street, Allentown, Pennsylvania, and said Defendant is herein

called Brunswick.

5-9    Admitted

10-11  Admitted.

12.    Denied. Answering Defendants lack knowledge as to the lack of joinder of National

Stainless & Alloy LLC (herein called National), especially where the allegations have

1

already been presented to Hon. Thomas Twardowski prior to the filing of this action and

the said testimony for Wells before the Bankruptcy Judge failed to persuade Hon.

Thomas Twardowski to grant the requested relief of Plaintiff

13.    Denied. National was engaged in the ownership of substantial inventory through its

acquisition of principally all of the assets of another entity as financed by the predecessor

to Wells, and its sale, processing and acquisition of metals primarily from mills and from

"first tier" suppliers. National lost its purchasing capacity, in material part due to the acts

and failures to fund and other acts or failures to honor commitments by Wells. By way of

further response, Defendants Lehigh Metals, Bacher and Wiener offered to become

guarantors of debt of National and Brutco under a plan to substantially increase available

funding as outlined prior to, and understood to be verbally committed by the Vice

President and Divisional Manager of Wells in a November 29, 2001 meeting and

conference call. Following the termination of National's ability to purchase and the

imposition of control by Wells which effectively prevented materials purchases as part of

its forced liquidation of materials, National was forced to turn to Lehigh Metals LLC

(Lehigh) to assist its liquidation of materials at higher than forced liquidation price by

Lehigh providing necessary material to fill customer orders for National and thereby

allowing National's creditors to obtain the highest available pricing for the items sold

prior to the imposition of a hurried inventory liquidation ordered by Wells' New York

managers. Unlike National, Lehigh does not sell the full range of stainless steel and

aluminum products and Lehigh lacks the inventory and sources and is relegated to non-

mill sources. As to Brutco Stainless & Alloy, Inc., ("Brutco"), this corporation was forced

2

to cease its production by the effective refusal of Wells to provide funding for its operations beyond the end of December, 2001 forcing its abrupt closing, and thereafter Wells (again acting through its New York managers) refused to fund rent or utility payment for the mill buildings. This decision by Wells forced, with Wells consent and funding for the purpose, the hasty removal of the machinery in buildings without electric during the cold of January, 2002. By order of Christopher Stavrakos, Vice President and Divisional Manager of Wells, as confirmed by the consultant hired by National at Wells' demand, National personnel removed the Brutco inventory and handled all aspects of its sale as part of the National budget. Upon demand of Wells, Brutco gave its inventory and equipment and other assets and accounts receiveable to Wells and the equipment and other assets were sold by Wells in a transaction fully financed by Wells Fargo Business Credit, Inc., the perceived parent of Wells Fargo Credit, Inc. and the listed employer of the said Christopher Stavrakos. The said machinery was sold to a leasing company which has leased the said items to Brunswick following acquisition of the items and the creation of Brunswick. Brunswick is engaged in the business of manufacture and sale of stainless steel tubing using machinery acquired by its lessor from Wells through the assistance of its affiliate Wells Fargo Business Credit, Inc. in a transaction made and agreed by Wells, with counsel and senior management active participation, At the insistence of Wells Fargo Business Credit, Inc. the machinery was pre-leased by its purchaser to Lehigh. Additionally, Brunswick has acquired materials to make tubing which materials were bought by its supplier from Wells and for which its supplier directly paid Wells with funds believed to have been cleared through Wells Fargo Bank as per approval of

3

Stavrakos. Other acquisitions of strip occurred on similar terms and funds were paid to Wells or to an account where it was compelled to be held without withdrawal in favor of Wells

14.    Admitted

15.    Denied. The credit facility was lowered, or effectively terminated as to its ability to allow operations.

16.    Denied. Said guarantee was provided solely to Century.

17.    Denied as to the allegation of default and as to the provision of notice as alleged.

18.    Denied. National made payments of principal and interest as required. However, Wells took for itself a loan extension fee and other fees which substantially harmed the companies, and otherwise sought to impose more severe restrictions upon borrowing and credit, as well as engaging in activities to undermine company operations and otherwise interfering in the business of National and Brutco; by way of further response, Wells - acting through Stavrakos- advised that the loan was not in default as of the first days in January, 2002, and reiterated this position when dealing with materials delivered.

19.    Denied. Wells did not offer debtor in possession financing, and its overall actions in the matters show its intent to cause the speedy liquidation of National and Brutco assets for the sole benefit of Wells to the extreme detriment of the owners and employees and creditors including some of the Defendants. In their effort to obtain necessary financing to "save" the companies, a November 29, 2001 meeting reached an understanding by which, inter alia, Lehigh and other Defendants would become guarantor for loans based upon substantial additional credit availability and financing, At a later time, following the

refusal by Wells to provide the financing package as stated, Christopher Stavrakos

advised Gary Bacher in a telephone call that Wells never intended to provide the funding

package as discussed and thereafter diligently worked upon by National and Brutco and

upon which assurances the companies transacted business not knowing the true intent of

Wells as later enunciated by Mr. Stavrakos. This not only caused substantial legal and

other expense, but also caused National to miss required payments to its vendors and also

caused the loss of a settlement with an entity which would have been a principal supplier

for Brutco. Instead of the intended multi-million dollar additional financial capability,

Wells only offered (through its ultimately submitted documentation) a substantially

reduced loan proposal at the end of 2001, differing remarkably from the assured lending

facility. That submission was not only very delayed, but was also unreasonable and

deterimentally different to Lehigh and the individual Defendants; and said proposal came

only after Wells had effectively forced the closure of Brutco. By way of further response,

on January 4, 2002, following extensive negotiations and faced with the necessity of

making the payroll whose funding was previously assured by Stavrakos in his capacity as

Vice President and Divisional Manager of Wells (and which substantially benefitted

Wells), terms of an inventory liquidation budget were agreed for National to liquidate its

inventory and that of Brutco. As a condition thereof, Wells compelled the hiring of a

consultant acceptable to Wells from a very short list, including a company headed by

Harvey Nachman, At all relevant times, Wells did not made a good faith offer of debtor

in possession financing, should it be able to prove any offering, and it is averred that the

acts of Wells, including statements of personal animosity of its senior management in

New York, as well as its violation of agreements show that Wells has never made a bona

fide offer intended to be fulfilled by which Wells would provide debtor in possession

financing to rehabilitate National or Brutco. By way of further response, Wells interfered

with the reorganization of National detrimental to some of the Defendants..

20.    Admitted that the inventory liquidation plan of National was agreed (under the aforesaid

pressure of limited funding and delays which crippled National) and that Brutco was to

fully liquidate since it was closed for the reasons as aforesaid. By way of further response,

Stavrakos advised that he did not want National or Brutco to file bankruptcy and that the

budget was provided to induce National to avoid bankruptcy filing which he advised

would cause substantial fees and expense (and loss of collateral value) to Wells. The

individual Defendants and borrowers Brutco and National cooperated with these

directives of Wells.

21.    Denied. The filing was made on or about February 7, 2002 and National cooperated with

Wells to seek to implement the requests of Wells to delay any loss of Wells dominion and

control over the forced inventory liquidation for the best benefit of Wells.

22.    Admitted.

23.    Denied. Despite demand, Wells has refused to provide necessary information about the

loan balance and has incurred cost and expense which were unreasonable and excessive,

as well as mismanaging the dealings with National and Brutco and individual Defendants

and account debtors and others to the substantial detriment of creditors, including Lehigh

and individual Defendants and Brutco, and it has otherwise violated terms of agreement

to the overall detriment of collections, and Wells has controlled the direction of National

6

and Brutco for its principal benefit.

24.    Admitted as to the furnishing of reports, but denied as to the same being reflective of approximate dollar value of inventory or to the same attesting to the inventory amount; by way of further response, the inventory reporting method was the result of directive from the original lender and was not changed despite request. The printouts of inventory provided, and summary of weight identified thereon, were printed from the inventory program of National as directed by the predecessor to Wells and continued at its insistence. At no time was it represented that this was an accurate scale weight of the material and Wells was specifically advised that the individual defendants refused to certify inventory quantities when requested on November 29, 2001 and at other times. By way of further response, *despite such knowledge, Wells granted each individual defendant and each of the other Releasees a full and complete general release without any exception for prior or current matter. Wells could have elected to exclude such matters but voluntarily and with aid and assistance of counsel did not make any exclusion from the Mutual General Releases.*

25.    Admitted as to the on-site visit during the afternoon of February 22, 2002 and an inventory view at various locations and response by the controller to specific questions about specific customers as made by "Helen". It is denied that this was more than a cursory view or that any representations were made at that time by Defendants.

26.    Denied. The "test count" at National was estimated by a participant to be far less than 10% and to have been conducted by looking at a piece of stainless steel and then checking the list to see that the printed information was accurate for the piece viewed. This strange

method of field audit was unknown to the individual Defendants until the present Wells counsel made an emergency motion to the Bankruptcy Court (which was among the acts violating the terms of the Mutual General Release to which Wells was a party and which was substantially amended and effectively co-authored by its counsel) Further, the documents being sent to Wells were advised to be subject to error due to the expediting of the inventory sales at the behest of Wells and the reductions in staff, as also demanded by Wells directly or through its consultant carrying the message of Wells officers.  Brutco's inventory in the National plant was observed by Mr. Bacher as to part of the checking, and it had no shortage identified even as the sales were completed. The field auditors were overheard to observe that the inventory could be as anticipated or could be off by 10% or more but could not be accurately determined.

27.    Admitted.

28.    Denied. To the contrary, Wells was advised that the inventory value was likely to be less than its borrowing base value due, in part, to the existence of 400 series stainless steel and the expedited time demanded, as well as that the receiveables included accounts with problems. **At no time did anyone from National or Brutco nor any Defendant then in existence represent or warrant or otherwise promise Wells that the assets were sufficient to payoff its loan balance**. **Upon information and belief, Wells understood that it was facing a shortfall. By way of further response, Wells granted a Mutual General Release effectively co-authored by its attorneys to terms acceptable to the Wells attorneys and their principal after much time and consideration by Wells and there was no contingency as to any such matters nor recitation of conditions relating**

8

**to matters which should have been included if these were ever a part thereof, which is denied.**

29.    Denied. *To the contrary, at all relevant times from a date not later than the November 29, 2001 meeting, the individual Defendants refused to assure the quantity or value of inventory, despite requests by or for Wells..* **Wells substantially negotiated and revised and amended and otherwise redrafted the release many times and never once made it conditional on any assurance or condition or promise despite being represented by various attorneys in Lowenstein Sandler PC**. *By way of further answer, Laurence May, Esq. counsel for National, was advised in a telephone call by Linda Berman, Esq., counsel for Wells, that Wells did not trust any information provided and believed that it was short, but was entering into the release anyway*, The said Release states that it is an integrated agreement which is contrary to the present allegations.

30.    Denied. To the contrary, the Mutual General Release only required performance by Bacher. *No performance was required, assured or promised by Wiener or Rubinberg or any affiliates. Each of them was a released party, but none agreed to perform any service or otherwise to assist Wells.*

31.    Denied. Said obligations were to occur **until the occurrence of a Liquidation Event.** A Liquidation Event occurred prior to April 8, 2002. Prior to such date, Bacher complied with his obligations, and has not been requested to provide fee for service assistance since the Liquidation Event.

32.    Denied. **The escrow should be presently released since it compelled performance by Bacher until stated events, and caused others to await June 1, 2002 which has**

9

**passed. The misstatement of the Escrow and Release is obvious upon review of the document. By way of further response, during the pendency of this suit, Christopher Stavrakos personally stated to Gary Bacher and Michael Rubinberg that he caused the suit to be filed only to bring [Bacher, Rubinberg and Wiener] to negotiate with him**, inferring that it was a pressure tactic to injure them and the companies as further bullying of the Defendants by Wells for its sole gain and without reasonable good faith basis.

33.   Denied. The analysis is incorrect and the actual weight is believed to be incorrect. Despite demand, Wells has continuously refused to provide inventory sales information for its sale of inventory delivered pursuant to the April 11, 2002 Stipulation and Bench Order.

34.   Denied. No inventory disappearance for the period of February 22, 2002 to March 21, 2002 has been shown to exist; and evidence contrary to this assertion was presented to U.S. Bankruptcy Judge Thomas Twardowski in a lengthy hearing on April 25, 2002 in which he denied the motion of Wells for a trustee. By way of further answer, some items of National's inventory **were sold to Lehigh by consent of Wells and with payment directly to Wells.** Other items were sold and the proceeds were part of the escrowed funds under the aforesaid April 11, 2002 Bench Order. At all relevant times during the period from February 22, 2002 until a date after April 11, 2002, the premises were under daily observation of Wells field examiners. Those field examiners went throughout the acres of stainless steel and the interior area and never advised any personnel of National nor any of the Defendants of any perceived change in inventory not accounted for by sales which the said auditors observed and in which the said auditors were participants. Errors

due to scale or human error were noted, such as one where a customer disputed the weight with a Wells field auditor and forced a truck scale weight off premises, which showed that the actual site scale weights recorded by National were about 5% low since the customer was required to pay additional charge instead of finding a lower weight as he alleged.

35.     Denied. First, there has been no showing of any missing inventory or inventory missing through act of a Defendant, and each business day the premises were viewed by Wells auditors who never advised of any material difference not supported by the sales and shipments which they observed. Second, the prices obtained by Wells in the forced liquidation have been substantially less than 50cents per pound - and have even been less than 4 cents per pound, gross value, prior to the costs of handling, loading, and other expenses. Not only is the disappearance erroneous, but the value even if it was correct is grossly overstated.

36.     Denied as to the alleged commingling of inventory. While the Defendants lack knowledge as to the observation of  unnamed Wells representatives -and their notes are not provided as exhibits - but Wells had records of the inventory sales and was usually the direct recipient of the sale proceeds where National sold to Lehigh or to Brunswick.

37.     Denied. The tangible assets of Brutco were delivered to Wells which sold the items to an entity which has allowed use by Lehigh or Brunswick, so Defendants do not understand this allegation as to those items. As far as customer lists and other information about Brutco, Bacher possessed the same prior to its formation or developed the same without being subject to any covenant or other restriction, and Brunswick has been able to sell

11

based upon the knowledge and effort of its personnel who had extensive prior experience in the industry and many contacts. By way of further response, Bacher was not precluded from use of any knowledge by his employment with any relevant entity. Any furniture, computers and computer software used have been in exchange for consideration provided and the value of such use is considered to be minimal, if existent. As to the other alleged benefits, the identity of customers is generally within the collective intelligence of the remaining personnel and the customer list or information has been greatly devalued since November 29, 2001 by acts of Wells.

38.    Denied. First, Brutco had no employees during this time (as was known to Wells and largely compelled by Wells). Second, the personnel of National who may have provided services to Lehigh or Brunswick did so for their own personal benefit based on a desire to remain in the employ of a continuing company since Wells forced January 4, 2002 liquidation of inventory and prior acts forced the cessation of the business of National as it was previously operated. *By way of further response, such activity was clearly disclosed to Wells and discussed at various times with Christopher Stavrakos who approved the same, and was aware of benefit coming to National from the same, and, in fact, Wells utilized this benefit as the substitute for "stay put bonuses usual in this type of situation, and benefitting only Wells. Further, the consultant knew of, and encouraged, the development of Lehigh to induce key personnel to remain with National and to avoid National being forced to make payments known as "stay put" bonuses from funds required to be provided by Wells which was receiving the benefit of all sales..* By way of further response, Lehigh provided use of machinery and equipment and furnishings and

12

other services, as well as rental to National during 2002. **National and Wells received substantial benefit from the fully disclosed operation of Lehigh and its inducement to personnel of National to remain through the end of the principal sales effort. It should be noted that the key personnel of National remained, all without paid stay put contracts, because of Lehigh.** Contrary to the allegation of funding, Wells failed to fully and completely the funding as promised in the January 4, 2002 funding agreement. If it was not for Lehigh, National would not have been able to have completed its operations as occurred, and the result is that Lehigh has incurred substantial expenses, costs and loss due to the employee obligations imposed by the Wells liquidation of National and Brutco inventory and the failure of Wells to honor the substantial inducements and assurances and to otherwise act as discussed.

39.    Denied. The bulk of these allegations were previously answered.

40.    Denied. To the contrary, Lehigh has paid substantial sums for the benefit of National and has paid rental and other costs and items concerning the premises which have benefitted Wells, all without receiving the full consideration as originally promised. Lehigh is not the functional equivalent of National, Lehigh was a pre-existing company which did expand its business after National was effectively closed out of its business for all but selling and shipping by acts of Wells. **There has not been a diversion of business of National to Lehigh, in large part because National was killed as a viable selling and then processing company by acts of Wells and its personnel or affiliates or those working for or with Wells. As is well known to Wells and caused by Wells, National ceased to be able to do anything other than to sell off its inventory for the sole and**

13

**exclusive benefit of Wells.** The allegation of misappropriation is denied. By way of further response, Lehigh has been substantially harmed by the refusal of Wells Fargo Business Credit, Inc and Wells to sell it the equipment and related assets for the liquidation appraised value and to finance the same on a non-recourse basis. Brunswick has not become the functional equivalent of Brutco, especially since Brutco was closed by Wells.

41.     Denied. To the contrary, Wells has consistently and with apparent personal hatred and animosity toward Defendants and with reckless disregard for its promises, agreements, inducements and otherwise to the detriment of the Defendants, acted in a commercially unreasonable method concerning the handling of this loan and forcing the liquidation of the companies prior to the time when the market rebound would have not only paid off the loan, but also provided additional funds for creditors including Defendants, since the Defendants or their affiliates are among the largest creditors of National and Brutco. By way of further response, the violation by Wells of the Release and statements in the industry attributed to Wells personnel and counsel are believed to have substantially diminished the value of claims and accounts and Wells has also failed to properly assemble collateral and otherwise engaged in actions more representative of animosity than intelligent business decisions. During the liquidation period, Wells has consistently been materially and substantially involved in making business and personnel decisions.

42-43.  Denied.

44.     Denied.

45.     Denied.

14

46.    Denied. The obligation of National and Brutco to provide access to books and records was imposed **until the occurrence of a Liquidation Event**. Until the same, Wells had such access and its auditors, including "Jerry" visited the executive offices and even had use of a desk, and they were daily attendees at the plant through the April 11, 2002 hearing and turn over of materials and daily thereafter, as well. To the extent that Wells made demands for records **after** the Liquidation Event, those were refused except for compliance with the Bench Order (despite the efforts of Linda Berman, Esq. to misstate the same in her direct communications to Gary Bacher). At all times prior to the act of Wells creating a Liquidation Event, Wells remained in sole control of the timing of the Liquidation Event and could have made its full records demand prior to its causing the Liquidation Event. **By way of further response, the allegation concerning the Bench Order is erroneous**. The terms of the Order (see Exhibit "A" hereto for the relevant section) did not compel the scope of view demanded by Plaintiff *after its agreement to lesser terms which were made the Order*, and its counsel was admonished by Judge Twardowski on April 25, 2002 concerning the same. **It is distressing that three lawyers from the firms shown as counsel and of counsel attended the April 25, 2002 hearing and still misstate the Court's Order**. The continued misstatement by counsel for Wells and the breach of the Mutual General Release, as well as other acts harmful to all Defendants and even to National, are among the justifications for restricting access after the Liquidation Event to only the items identified in the said Order. By way of further response, the records were available at the Rule 2004 deposition of Pamela Laury as demanded by John Sherwood, Esq., but his Zachary Rosenbaum, Esq., co-counsel and

Christopher Stavrakos, the Wells Vice President, **each refused the offer to review the records which their counsel specifically demanded.** It should be further noted that Wells has not provided funds to National to pay rental since March, 2002, nor has it provided any funds for other services it expects of National.

47.   DENIED. To the contrary, the accounts receiveable records were provided in folders for each invoice, in the usual and customary manner which the same were kept by National or Brutco.

48.   Denied. Prior to the Liquidation Event, Bacher and others contacted account debtors and others against whom claims existed, and these efforts continued even after Dhamendra Lachman, a Vice President of Wells "fired" Mr. Bacher, but such acts were no longer required of Mr. Bacher when Wells refused to pay Mr. Bacher for services as required by the release, thereby causing another Liquidation Event and freeing Mr. Bacher from such obligations (even though Wells did have its personnel make collection calls with the assistance of National). It is acknowledged that some customers disputed bills or quality or other matters, but the methods used by Wells, and the actions of Wells showing rifts with personnel of Brutco and National, as well as the Wells' personnel attacks on Bacher and others are believed responsible for causing many of the alleged collection problems. It should also be noted that comments of Bacher were ignored by Lachman, Stavrakos and others.

49.   Denied. Prior to the Liquidation Event, documents were delivered. After the Liquidation Event, the obligation ceased. By way of further response, insurance claim documents were available to Stavrakos and Rosenbaum on May 30, 2002 as per the demand of

16

Lowenstein Sandler, PC, but Stavrakos and Rosenbaum refused the offer to review the same. Bacher has been ready, willing and able - except for the harm to the case caused by the acts of Dhamendra Lachman, Christopher Stavrakos, Lowenstein Sandler, PC and Wells - to assist in the matter.

50.    Denied. Prior to the Liquidation Event, meaningful assistance was provided and shown by collections through the personal calls of Bacher and others. Despite numerous demands, Wells had refused to provide payment information to identify overdue accounts of National and Brutco, which was partially provided on June 3, 2002. As of this time, Lehigh and Brunswick have no knowledge of their selling to entities having large outstanding balances to National and Brutco. By way of further response, the information provided indicates that **Wells, by intentional act and direction of Christopher Stavrakos and Dhamendra Lachman has extended substantial additional credit to an entity which has not paid for materials and for which they decided to provide credit, even after Bacher informed Wells that he could not authorize credit**.

51.    Defendants reallege each of their responses in paragraphs 1 through 50 as if fully set forth herein at length.

52.    Denied. The Releases are due to the parties; by way of further response the relevant inquiry is prior to the first Liquidation Event and all conditions of Defendants for release have been met.

53.    Denied. The terms for the Release have been met.

54.    Denied. The terms for the Release have been met and the within action is considered to be made in bad faith.

17

55. Denied. To the contrary, the conditions for release have been met.

56. Denied. The drafted Release does not comport with the allegation, since it was a full and complete agreement.

57. Denied. There is no mutual mistake nor unilateral mistake. To the contrary, Wells had personnel and contractors review items at great expense and made decisions based on its own evaluations. Additionally, the Lowenstein counsel who wrote the Release (and also served as the Wells messenger many times) advised National's counsel that Wells did not rely upon the Defendants or any of them.

WHEREFORE, the Defendants demand that the Release be delivered immediately, and that they be granted attorney fees, costs, expenses and damages.

58. Defendants reallege each of their responses in paragraphs 1 through 57 as if fully set forth herein at length.

59. Denied. Plaintiffs fail to provide sufficient information for Defendants to respond and therefore the allegation is denied for such reason as well as all others which may be applicable.

60. Denied. The existence of Lehigh Metals LLC was fully disclosed at all relevant times, and it was the required original lessee of the tubing mills sold by Wells at the insistence and request of Dhamendra Lachman and Wells and Wells Fargo Business Credit, Inc.  By way of further response, Christopher Stavrakos was informed as to the operation of Lehigh Metals LLC at the same places as National Stainless & Alloy LLC, and he encouraged the same. Also disclosed were the exchange of services and other values

provided by Lehigh Metals LLC. Defendants believe that they are the ones deceived by Wells since Lehigh was known and granted assurances which have not been fulfilled by Wells, and Brunswick has invested in the equipment based upon the sale by Wells and Wells Fargo Business Credit, Inc.  The existence of commingling between National and Brutco was done at the specific insistance and request of Christopher Stavrakos. To the extent of dealings among entities to which the allegation may apply, Defendants believe that fair value was exchanged in kind or otherwise, and Defendants further believe that dealings concerning the liquidation period funding were made with the consent and/or knowledge or notice of Christopher Stavrakos and/or others hired by or working for or at the direction of Wells.

61.    Denied. To the contrary, the books and records were available *prior to the Liquidation Event*. Only after the intentional refusal by Wells to fund was access denied, in accord with the Mutual General Release, until the limited access allowed in accord with the April 11, 2002 Order.By way of further response, it is averred that the methods and actions of Wells have been the substantial cause of collections problems, if any.

62.    Denied. Wells made material misrepresentations and omissions with the intent that Defendants and those relying upon Defendant would rely upon the misrepresentations of Wells and its employees and affiliates to create financial benefit for Wells.

63-64.  Denied.

WHEREFORE, Defendants pray that this Honorable Court:

1.    Dismiss the within action with prejudice

2.    Award costs, fees, expenses, damages and punitive damages against Wells

3.      Award Defendants, and each of them, such other and further relief as is

appropriate

65.    Defendants reallege each of their responses in paragraphs 1 through 64 as if fully set forth

herein at length.

66.    Denied. Plaintiffs fail to provide sufficient information for Defendants to respond and

therefore the allegation is denied for such reason as well as all others which may be

applicable.

67.    Denied. The existence of Lehigh Metals was fully disclosed at all relevant times, and it

was the required original lessee of the Brutco mills at the insistence and request of

Dhamendra Lachman and Wells and Wells Fargo Business Credit, Inc. By way of further

response, Christopher Stavrakos was informed as to its operation at the same places and

its exchanges of services and other values. Defendants believe that they are the ones

deceived by Wells since Lehigh was known and granted assurances which have not been

fulfilled by Wells, and Brunswick has invested in the equipment based upon the sale by

Wells and Wells Fargo Business Credit, Inc. The existence of commingling of services or

assets between National and Brutco was done at the specific insistance and request of

Christopher Stavrakos as the Vice President and Divisional Manager of Wells for the

benefit of Wells. To the extent of dealings among entities to which the allegation may

apply, Defendants believe that fair value was exchanged in kind or otherwise, and

Defendants further believe that dealings concerning the liquidation period funding were

made with the consent and/or knowledge or notice of Christopher Stavrakos and/or others

hired by or working for or at the direction of Wells.

20

68.     Denied. To the contrary, the books and records were available *prior to the Liquidation Event*. Only after the intentional refusal by Wells to fund was access denied, in accord with the Mutual General Release, until the limited access allowed in accord with the April 11, 2002 Order.By way of further response, it is averred that the methods and actions of Wells have been the substantial cause of collections problems, if any. It is further averred that the Defendants had an interest in seeing collections, and the Defendants are among the creditors who have lost money due to the forced liquidation by Wells and the resulting bankruptcy it caused.

69.     Denied. Wells and its senior management made material misrepresentations and omissions with the intent that Defendants and those relying upon Defendant would rely upon the misrepresentations of Wells and its employees and affiliates to create financial benefit for Wells.

70-71.  Denied.

WHEREFORE, Defendants pray that this Honorable Court:

1.     Dismiss the within action with prejudice

2.     Award costs, fees, expenses, damages and punitive damages against Wells

3.     Award Defendants, and each of them, such other and further relief as is appropriate

72.     Defendants reallege each of their responses in paragraphs 1 through 71 as if fully set forth herein at length.

73-77.  Denied. Defendants incorporate by reference the response set forth in paragraphs 65-71 of this Answer as if fully set forth herein at length.

21

WHEREFORE, Defendants pray that this Honorable Court:

1.    Dismiss the within action with prejudice

2.    Award costs, fees, expenses, damages and punitive damages against Wells

3.    Award Defendants, and each of them, such other and further relief as is
      appropriate

78.    Defendants reallege each of their responses in paragraphs 1 through 77 as if fully set forth
       herein at length.

79-80. Denied.

81.    Denied. To the extent of dealings among entities to which the allegation may apply,
       Defendants believe that fair value was exchanged in kind or otherwise, and Defendants
       further believe that dealings concerning the liquidation period funding were made with
       the consent and/or knowledge or notice of Christopher Stavrakos and/or others hired by
       or working for or at the direction of Wells. By way of further response, Wells failed to
       fund the promised sums.

82.    Denied.

WHEREFORE, Defendants pray that this Honorable Court:

1.    Dismiss the within action with prejudice

2.    Award costs, fees, expenses, damages and punitive damages against Wells

3.    Award Defendants, and each of them, such other and further relief as is
      appropriate

83.    Defendants reallege each of their responses in paragraphs 1 through 82 as if fully set forth
       herein at length.

84.     Denied. To the contrary, Brutco conveyed its assets to Wells, and Wells - with the full assistance and financing of Wells Fargo Business Credit, Inc. - transferred the Brutco assets (which it acquired for its sole benefit from Brutco) for ultimate use by Brunswick. Further, Wells - acting in concert with Wells Fargo Bank did receive payment for various assets of National which were purchased from it by Lehigh. It is believed that such conveyances and/or use as occurred from National or Brutco were made for just compensation.

85.     Denied.

86.     Denied. All transactions were believed to be duly documented and are believed to have been paid for just compensation. By way of further response, Wells failed to fully fund the commitment in its January 4, 2002 letter to the detriment of National and Brutco and such Defendants who were harmed thereby. The response to paragraph 67 is incorporated by reference (as are all other relevant responses).

87.     Denied.

88.     Denied. To the contrary, Wells has received substantial benefits without providing the compensation and consideration agreed by representatives of Wells and Wells Fargo Business Credit, Inc. and/or as taken by or for or through Wells Fargo Bank.

89.     Denied.

WHEREFORE, Defendants pray that this Honorable Court:

1.      Dismiss the within action with prejudice

2.      Award costs, fees, expenses, damages and punitive damages against Wells

3.      Award Defendants, and each of them, such other and further relief as is

23

        appropriate

90.    Defendants reallege each of their responses in paragraphs 1 through 89 as if fully set forth herein at length.

91.    Denied.

92.    Denied. The response to paragraph 86 is incorporated by reference as if fully set forth herein at length.

93.    Denied. By way of further response, the acts of Wells, Wells Fargo Business Credit, Inc. and/or Wells Fargo Bank have harmed Defendants to a substantial degree.

94.    Denied.

WHEREFORE, Defendants pray that this Honorable Court:

        1.    Dismiss the within action with prejudice

        2.    Award costs, fees, expenses, damages and punitive damages against Wells

        3.    Award Defendants, and each of them, such other and further relief as is appropriate

95.    Defendants reallege each of their responses in paragraphs 1 through 94 as if fully set forth herein at length.

96.    Admitted, although the failure of Brutco to be able to make payments is due, inter alia, to the acts of Plaintiff and its personnel.

97.    Denied. Wells has failed to provide an accurate statement of loan balance and sufficient information to determine the current loan balance, if any, and therefore Defendant Brutco lacks sufficient information to admit or deny the allegation.

98.    Denied. The conclusory statement is not necessarily correct.

WHEREFORE, Defendants pray that this Honorable Court:

1.  Dismiss the within action with prejudice

2.  Award costs, fees, expenses, damages and punitive damages against Wells

3.  Award Defendants, and each of them, such other and further relief as is appropriate

99.  Defendants reallege each of their responses in paragraphs 1 through 98 as if fully set forth herein at length.

100.  Denied.  By way of further response, the Plaintiff and its predecessor were advised that certain materials were registered in the inventory of National and Brutco at the calculated basis (i.e. theoretical weight). "Theoretical Weight" is an industry standard and a well-known fact in the stainless steel industry. Industry related publications fully explain the calculations of this concept. Furthermore, the Plaintiff knew or should have known of this matter from the two (2) separate appraisal companies hired and selected solely by it to determine the value of the inventory - for which National was forced to pay even though such entities were selected solely by Plaintiff for its own benefit - and Plaintiff has caused numerous persons selected solely by it to visit the premises and review books and records, who were shown or told or who did, should or would have known about theoretical weights, especially that the facilities of National forced use of calculated weights because of an inability to make scale weight of many items in inventory. By way of further response, when demand was made by Wells, the individual Defendants refused to certify or otherwise assure any weight and did not make such representations. Upon information and belief, there was no material adverse discrepancy in the Brutco

inventory. Further, at the commencement of the loan, all parties knew and agreed that the

quantity of inventory was estimated, and the method for inventory reporting and

calculation were as arranged by Wells' predecessor.   It is further denied that there was

any duty or obligation of the individual Defendants to Plaintiff. It is further averred that

the Plaintiff's representatives advised that they did not rely upon individual defendants

and that the knowledge of the loan officer was self described as being superior to that of

the individual Defendants. The Defendants incorporate by reference the transcript of the

United States Bankruptcy Court proceeding concerning the hearing on this matter. It is

further averred that the individual Defendants were acting, at all relevant times, solely in

the capacity as corporate officers and/or as limited liability company managers/officers,

as applicable.

101.   Admitted as to the concept of "theoretical weight"; denied as to the balance of the

averment. The response to paragraph 100 is incorporated by reference. It is further

averred that the conclusory statement is wrong and thus also denied. The referenced

testimony is a portion of the testimony of  Bacher in response to questions posed at the

Bankruptcy hearing and subject to cross examination by John Sherwood, Esq, one of the

three attorneys for Wells at such hearing in the Bankruptcy Court in which Judge

Twardowski apparently did not find the Plaintiff to be credible as he denied the request

for a trustee by Plaintiff.  By way of further response, the method and means of reporting

was a requirement imposed by the original lender and followed after the loan acquisition.

It is also averred that Wells was aware of industry standards at all relevant times.

102.    Denied. No such material misrepresentation or omission was made. The response to

Paragraph 100 is incorporated by reference.

103.   Denied.  The response to paragraph 100 is incorporated by reference as if fully set forth herein at length. By way of further response, Wells has consistently hired appraisers and others upon which it relied, and who were selected by Wells.

104.   Denied. To the contrary, Wells has consistently hired appraisers and others upon which it relied.  Defendants incorporate the response to paragraph 100 by reference.

WHEREFORE, Defendants pray that this Honorable Court:

    1.    Dismiss the within action with prejudice

    2.    Award costs, fees, expenses, damages and punitive damages against Wells

    3.    Award Defendants, and each of them, such other and further relief as is appropriate

105.   Defendants reallege each of their responses in paragraphs 1 through 104 as if fully set forth herein at length.

106.   Denied. Defendants incorporate the response to paragraph 100 by reference.

107.   Denied. Defendants incorporate the response to paragraphs 100 and 101 by reference.

108.   Denied.

109.   Denied. To the contrary, theoretical weight was disclosed to the predecessor and was, should or would have been known to the experts hired by Plaintiff.

110.   Denied.

WHERFORE, Defendants Brutco, Bacher and Wiener demand that judgment be entered in their favor and against Plaintiff and that each of said Defendants be awarded costs of defense, expenses and punitive damages and prejudgment and postjudgment damages.

<u>Affirmative Defenses</u>

First Affirmative Defense

1.    The within action should be dismissed because it has been brought in bad faith.

2.    Christopher Stavrakos, Divisional Manager and Vice President of the Plaintiff and of Wells Fargo Business Credit, Inc. has stated to Defendants Bacher and Rubinberg that the within action was filed solely to bring the individual Defendants to negotiate with him and to give him "leverage".

3.    Therefore, the within action is an abuse of process as well as a misuse of process.

Second Affirmative Defense

1.    There is no liability of individual defendant, Gary Bacher.

2.    There is no allegation of any act or omission for personal benefit or gain.

3.    There is no allegation of any act or omission for anyone other than a disclosed corporation of which he was an officer  within the scope of his duties as such representative or of a disclosed limited liability company of which he was a manager/officer within the scope of his duties as such representative.

Third Affirmative Defense

1.    There is no liability of individual defendant Joel Wiener.

2.    There is no allegation of any act or omission for personal benefit or gain.

3.    There is no allegation of any act or omission for anyone other than a disclosed corporation of which he was an officer within the scope of his duties as such representative or of a disclosed limited liability company of which he was a manager/officer within the scope of his duties as such representative.

28

4.    There is no allegation of any act or omission for anyone other than a disclosed corporation of which he was an officer  within the scope of his duties as such representative or of a disclosed limited liability company of which he was a manager/officer within the scope of his duties as such representative.

### Fourth Affirmative Defense

The Mutual Release Agreement was the result of substantial rewriting by Wells (directly or through counsel) and Wells and its counsel set forth the terms and conditions of the same, but never made the demands first raised in this suit a condition or requirement despite knowledge of their potential existence.

### Fifth Affirmative Defense

The within action is barred by the terms of the Mutual Release Agreement, which Plaintiff has attached as Exhibit "D" to the Complaint, and which is attached as Exhibit "A" hereto.

### Sixth Affirmative Defense

Plaintiff has breached the Mutual General Release.

### Seventh Affirmative Defense

The within action is barred by the Doctrine of Waiver

### Eighth Affirmative Defense

The within action is barred by the negligence of the Plaintiff and its employees, contractors, agents, servants, attorneys and/or affiliates.

### Ninth Affirmative Defense

The within action is barred by the Doctrine of Accord and Satisfaction.

### Tenth Affirmative Defense

The Complaint fails to state a cause of action upon which relief can be granted as to Defendant Gary Bacher.

## Eleventh Affirmative Defense

The Complaint fails to state a cause of action upon which relief can be granted as to Defendant Joel Wiener.

## Twelfth Affirmative Defense

The Complaint fails to state a cause of action upon which relief can be granted as to Defendant Lehigh Metals LLC.

## Thirteenth Affirmative Defense

The Complaint fails to state a cause of action upon which relief can be granted as to Defendant Brunswick Tube & Bar LLC

## Fourteenth Affirmative Defense

The Complaint fails to state a cause of action upon which relief can be granted as to Defendant Brutco Stainless & Alloy, Inc.

## Fifteenth Affirmative Defense

The Complaint should be dismissed because of the fraud of the agents, employees and/or affiliates of Wells.

## Sixteenth Affirmative Defense

The within action is barred by the Unclean Hands of the Plaintiff

## Seventeenth Affirmative Defense

The within action should be dismissed as to all allegations of fraud because of the failure to comply with applicable Rules.

### Eighteenth Affirmative Defense

The within action should be dismissed because of the fraud of the Plaintiff as stated in the foregoing paragraphs.

### Nineteenth Affirmative Defense

The within action is barred by failure of consideration from Plaintiff to Defendant Gary Bacher..

### Twentieth Affirmative Defense

The within action is barred by failure of consideration from Plaintiff to Defendant Joel Wiener.

### Twentyfirst Affirmative Defense

The claims of the Plaintiff are barred by its breach of contracts with the Defendants.

### Twentysecond Affirmative Defense

The claims of the Plaintiff are barred by detrimental reliance of the Defendants as induced and intended by Plaintiff.

WHEREFORE, Answering Defendants request this Honorable Court to dismiss the within action of Plaintiff with prejudice and to award counsel fees, costs and punitive damages to Answering Defendants against Plaintiff.

### COUNTERCLAIM

111.    The Counterclaim Plaintiffs are Brunswick Tube & Bar LLC, herein called Brunswick, a Pennsylvania limited liability company, Lehigh Metals LLC, a Pennsylvania limited liability company, Gary Bacher and Joel Wiener.

112.  Counterclaim Defendant is Wells Fargo Credit, Inc., a corporation which has a known business address of 119 West 40th Street, New York, New York (which is herein referred to as Wells).

Counterclaim Count One

113.  The averments of paragraphs 111 and 112 are incorporated by reference as if fully set forth herein.

114.  Wells has acted in violation of the Mutual General Release (attached as Exhibit "A" to this Answer, Affirmative Defenses and Counterclaim.

115.  The violations of the Mutual General Release have harmed Counterclaim Plaintiffs Bacher, Wiener, Lehigh and Brunswick.

116.  Upon information and belief, Wells has made statements and taken acts, directly or through agents or contractors acting at its instruction or compensated or otherwise directed by it, which violated the terms of the Mutual General Release during the period between its execution and June 1, 2002.

117.  Said actions were taken with the intent and knowledge that they would harm the aforesaid Counterclaim Plaintiffs, which knowledge was admitted by Christopher Stavrakos in discussions with Bacher and Rubinberg,

118.  Counterclaim Plaintiffs have been, are, and will be harmed by the acts of Wells and those acting for it and with it.

119.  The said harm is believed to be intentionally directed and to also be the result of stated personal animosity of officers of Wells, including Christopher Stavrakos and Dhamendra Lachman.

32

120.    Wells' personnel has previously advised of their capability to utilize the financial resources of this banking giant to damage individuals.

121.    Christopher Stavrakos told Bacher that it would be his mission to destroy Bacher if Wells suffered any loss in its loan.

122.    It is therefore averred that the within action is brought in bad faith and for improper purpose as aforesaid.

WHEREFORE, Counterclaim Plaintiffs demand that judgment be entered in their favor and against Wells Fargo Credit, Inc. in a sum in excess of the arbitration limits of this Court and for punitive damages as well as counsel fees and costs.

COUNTERCLAIM COUNT TWO

123.    The averments of paragraphs 111 and 122 are incorporated by reference as if fully set forth herein.

124.    Wells has taken at least one payment due to Lehigh by reason of its redirection of mail.

125.    Christopher Stavrakos and others advised that Mr. Stavrakos was the sole person opening the redirected mail and determining which items were to be deposited, retained or returned.

126.    Said check was advised to clearly indicate the full name of Lehigh Metals LLC and due from an entity not having a receiveable due to Brutco, which were to be the only checks not forwarded back to Allentown..

127.    Despite demand by Lehigh and its customer, the funds have not been returned.

128.    A similar event occurred with a check due to Brunswick, which has similarly been

33

cashed through Wells Fargo Bank and the proceeds withheld from Brunswick as well as the payor.

129.   Stavrakos advised that he was holding these monies for purposes of "leverage" over the Counterclaim Plaintiffs.

130.   These acts interfered with the business relationships of Counterclaim Plaintiffs.

131.   Said results are understood to have been intended by Wells from these actions by its executive officer.

WHEREFORE, Counterclaim Plaintiffs demand that judgment be entered in their favor and against Wells Fargo Credit, Inc. in a sum in excess of the arbitration limits of this Court and for punitive damages as well as counsel fees and costs.

COUNTERCLAIM COUNT THREE

132.   The averments of paragraphs 111 and 122 are incorporated by reference as if fully set forth herein.

133.   Upon information and belief, Wells personnel made calls and/or other communication to lenders or others planning to do business with Lehigh which were either (a) in violation of the Mutual General Release, (b) inaccurate or otherwise subject to material misrepresentation or omission or (c) otherwise improper.

134.   Said acts caused loss and harm to the Counterclaim Plaintiffs, including, but not limited to loss of financing opportunities, cash flow difficulties and loss of business opportunities and profits.

WHEREFORE, Counterclaim Plaintiffs demand that judgment be entered in their favor

and against Wells Fargo Credit, Inc. in a sum in excess of the arbitration limits of this Court and for punitive damages as well as counsel fees and costs.

## COUNTERCLAIM COUNT FOUR

135.    The averments of paragraphs 111 and 122 are incorporated by reference as if fully set forth herein.

136.    Upon information and belief, Wells personnel made calls and/or other communication to lenders or others planning to do business with Brunswick which were either (a) in violation of the Mutual General Release, (b) inaccurate or otherwise subject to material misrepresentation or omission or (c) otherwise improper.

137.    Said acts caused loss and harm to the Counterclaim Plaintiffs, including, but not limited to loss of financing opportunities, cash flow difficulties and loss of business opportunities and profits.

WHEREFORE, Counterclaim Plaintiffs demand that judgment be entered in their favor and against Wells Fargo Credit, Inc. in a sum in excess of the arbitration limits of this Court and for punitive damages as well as counsel fees and costs.

## COUNTERCLAIM COUNT FIVE

138.    The averments of paragraphs 111 and 122 are incorporated by reference as if fully set forth herein.

139.    Counterclaim Plaintiff Gary Bacher was induced by Wells to perform services for National and Brutco which would, and did, subtantially benefit Wells.

35

140.    Wells promised consideration to Bacher which it either did not deliver or which it caused to become unavailable or otherwise interfered with its delivery upon the promised terms and conditions.

141.    As a result of such failures by Wells to honor its commitments, and the other promises relied upon by Bacher, he has been harmed.

142.    Counterclaim Plaintiff Gary Bacher also failed to receive full compensation from National at the insistence of Wells.

143.    Upon information and belief, Wells has made defamatory statements about Bacher.

WHEREFORE, Gary Bacher demands that judgment be entered in his favor against Wells Fargo Credit, Inc. in a sum in excess of the arbitration limits of this Court and for punitive damages.

## COUNTERCLAIM COUNT SIX

144.    The averments of paragraphs 111 and 122 are incorporated by reference as if fully set forth herein.

145.    Counterclaim Plaintiff Joel Wiener was induced by Wells (through communication from those persons with whom Wells would have discussions) to perform services for National and Brutco which would, and did, subtantially benefit Wells.

146.    Wells, therefore, promised consideration to Wiener which it either did not deliver or which it caused to become unavailable or otherwise interfered with its delivery upon the promised terms and conditions.

36

147.  As a result of such failures by Wells to honor its commitments, and the other
      promises relied upon by Wiener, he has been harmed.

148.  Counterclaim Plaintiff Joel Wiener also failed to receive full compensation from
      National at the insistence of Wells.

149.  Upon information and belief, Wells has made defamatory comments concerning
      Counterclaim Plaintiff Joel Wiener.

WHEREFORE, Joel Wiener demands that judgment be entered in his favor against Wells
Fargo Credit, Inc. in a sum in excess of the arbitration limits of this Court and for punitive
damages.

## COUNTERCLAIM COUNT SEVEN

150.  The averments of paragraphs 111 and 122 are incorporated by reference as if fully
      set forth herein.

151.  Dhamendra Lachman, Vice President of Wells has made derogatory comments
      indicating personal animosity toward Bacher and Wiener.

152.  Christopher Stavrakos, Vice President and Divisional Manager of Wells, has
      made derogatory comments indicating personal animosity toward Wiener.

153.  The Counterclaim Defendant has misrepresented various facts in a manner
      harmful to Bacher and Wiener.

154.  Counterclaim Plaintiffs believe that such personal animosity has led to the within
      suit being commenced against Counterclaim Plaintiffs and to the other acts
      against Counterclaim Plaintiffs,and each of them.

155.  Counterclaim Plaintiffs have been advised by Stavrakos that he instituted the

37

within action to force better negotiation position for himself and Wells.

156.    Counterclaim Plaintiffs have been advised by Stavrakos that he knew that the effect of the suit was to harm the business of Brunswick and of Lehigh.

WHEREFORE, Counterclaim Plaintiffs demand that judgment be entered in their favor and against Wells Fargo Credit, Inc. in a sum in excess of the arbitration limits because of the improper and/or illegal commencement and maintenance by Wells of the within action for reasons as aforesaid.

## COUNTERCLAIM COUNT EIGHT

157.    The averments of paragraphs 111 and 122 are incorporated by reference as if fully set forth herein.

158.    During 2002, Wells made promises and inducements to Lehigh for it to maintain operations and to agree with National personnel to provide employment if they would remain with National through its inventory liquidation for Wells.

159.    In reliance on the promises, Lehigh made such arrangements to its detriment and to the benefit of Wells.

160.    The result of the arrangements of Lehigh was that the personnel were not paid stay put or other forms of bonus and compensation usual for a liquidating entity like National and paid from the proceeds otherwise going to the secured lender.

161.    Wells knew, at all relevant times, that it was receiving a lower cost and higher return by inducing Lehigh to assure workers' employment based on the assurances by Wells of equipment for Lehigh at low rates and reasonable price financed by its affiliate.

162.  Wells knew, at all relevant times, that it was receiving a higher return by inducing Lehigh to acquire material and sell it to fill in the National customer orders to allow "full group" sales at higher prices than available without such additions.

163.  Lehigh continued to employ workers after the cessation of full funding by National to fulfill its agreement, but Wells failed to honor its promises and inducements, and instead harmed the business of Lehigh.

164.  Lehigh has suffered loss and expense by reason of the acts of Wells.

165.  At all relevant times, Stavrakos knew of, and approved, the operations of Lehigh.

166.  Said acts were believed to be intentional, deceitful and for the purpose of providing gain to Wells and harming Lehigh Metals LLC.

167.  Said acts have also harmed the other counterclaim plaintiffs.

WHEREFORE, the counterclaim plaintiffs, especially Lehigh Metals LLC, demand judgment in their favor and against Wells Fargo Credit, Inc. for a sum in excess of the arbitration limits of this Court and for punitive damages.

## COUNTERCLAIM COUNT NINE

168.  The averments of paragraphs 111 and 167 are incorporated by reference as if fully set forth herein.

169.  The actions of the Counterclaim Defendant were undertaken with the intent of causing harm and financial injury to Counterclaim Plaintiffs.

170.  The actions of the Counterclaim Defendant against Lehigh and Brunswick have been taken with the intent to interrupt their business and to harm and interrupt the business of the other Counterclaim Plaintiffs.

39

171.    The actions of Counterclaim Defendant against the Counterclaim Plaintiffs,
including but not limited to communication and other dissemination of
"misinformation" has been done with reckless disregard or knowing falsity (based
upon the comments of Mr. Stavrakos and the prior threats of the Wells Vice
Presidents).

172.    The actions of Wells have been aided, assisted and furthered by Wells Fargo Bank

173.    An exhibit to the Complaint indicates that Wells Fargo Credit, Inc. had assets over
$75 million.

174.    At all relevant times, the principal actors for Wells identified themselves to also
be officers of Wells Fargo Business Credit, Inc. and to be dealing with the senior
management of that entity.

175.    The actions of Wells have knowingly and recklessly violated the Mutual General
Release for the illegitimate purpose of harm and injury and loss to the
Counterclaim Plaintiffs.

WHEREFORE, the Counterclaim Plaintiffs request that judgment be entered in their
favor and against Wells Fargo Credit, Inc. for punitive damages in a sum which this Honorable
Court shall deem just and proper considering the vast financial resources and the misuse of such
resources by Wells Fargo Credit, Inc. and the assistance in some of these actions by its corporate

40

affiliates Wells Fargo Bank and Wells Fargo Business Credit, Inc.

STEVENS & JOHNSON


By:_____
        Richard F. Stevens
        Atty ID 08073
740 Hamilton Street
Allentown, Pa. 18101
610-439-1451

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

WELLS FARGO CREDIT, INC.,   )
   Plaintiff        )
              )  Case Number: 02-3636
   vs.         )
BRUTCO STAINLESS & ALLOY, INC., )
LEHIGH METALS LLC, BRUNSWICK )  Assigned to Judge SCHILLER
TUBE & BAR LLC, GARY BACHER,  )
MICHAEL RUBINBERG AND  JOEL  )
WIENER,         )
   Defendants     )

Certificate of Service
Answer and Affirmative Defenses and Counterclaim of Defendants
Brunswick Tube & Bar LLC, Lehigh Metals LLC and Gary Bacher and Joel Wiener
and Answer and Affirmative Defenses of Brutco Stainless & Alloy, Inc.

   I certify that a true and correct copy of the above referenced pleading was served, by first class mail, postage prepared by placing the same in the United States Postal Service mail to:

   DANIEL T.  FITCH
   Stradley Ronon
   2600 One Commerce Square
   Philadelphia, PA 19103-7098

   On August 16, 2002.

          STEVENS & JOHNSON

          By:_____
            Richard F. Stevens
          740 Hamilton Street
          Allentown, Pa. 18101
          610-439-1451